**EXHIBIT C**

OUR FILE NO. 540.160120

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
RICHARD PALOMO SOLORZANO,

                                    Plaintiff,

            -against-

AHTNA TECHNICAL SERVICES, INC.,

                                    Defendant.
-------------------------------------------------------------------x

12 CV 5711

**AMENDED ANSWER**

District Judge:
Paul G. Gardephe

Magistrate Judge:
James L. Cott

The defendant, AHTNA TECHNICAL SERVICES, INC., by the undersigned attorneys, hereby interposes its answer to the plaintiff's complaint, and states the following:

## PARTIES:

1.    Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph "1" of the complaint.

2.    As and for a response to the allegations contained in paragraph "2" of the complaint, the defendant states AHTNA TECHNICAL SERVICES, INCORPORATED (ATSI) is an Alaska Native Corporation-owned 8(a) business concern. ATSI provided Detention Center Operations Services at the ICE facility located at 27491 Buena Vista Blvd., Los Fresnos, Texas. ATSI has been actively registered as a foreign business corporation in New York since March 30, 2007. ATSI no longer does business in New York and therefore no longer derives substantial revenue from such activities. Defendant's principal place of business is 560 E. 34th Avenue, Suite 300, Anchorage,

CALLAN, KOSTER,
BRADY & BRENNAN, LLP
COUNSELORS AND
ATTORNEYS AT LAW
One Whitehall Street
New York, New York 10004
212-248-8800

1

Alaska. ATSI does not maintain a place of business in New York. With respect to any further allegations in paragraph "2" not specifically replied to the answering defendant denies that it has knowledge or information sufficient to form a belief.

## GENERAL ALLEGATIONS

3.    With respect to the allegations contained in paragraph "3" of the complaint, ATSI admits Lieutenant Raul Leal was a supervising officer at the Port Isabel Processing Center and denies that he was employed by the defendant. Defendant denies it has knowledge or information sufficient to form a belief as to the remaining allegations.

4.    With respect to the allegations contained in paragraph "4" of the complaint, ATSI admits Ismael Saldana was an officer at the Port Isabel Processing Center and defendant further denies it has knowledge or information sufficient to form a belief as to the remaining allegations of paragraph "4" of the complaint.

5.    With respect to the allegations contained in paragraph "5" of the complaint, ATSI admits Adel Garcia was an officer at the Port Isabel Processing Center and defendant further denies it has knowledge or information sufficient to form a belief as to the remaining allegations of paragraph "5" of the complaint.

6.    With respect to the allegations contained in paragraph "6" of the complaint, ATSI admits Luis DeLeon was an officer at the Port Isabel Processing Center and defendant further denies it has knowledge or information sufficient to form a belief as to the remaining allegations of paragraph "6" of the complaint.

7. With respect to the allegations contained in paragraph "7" of the complaint, ATSI admits Officer Chapa was an officer at the Port Isabel Processing Center and defendant further denies it has knowledge or information sufficient to form a belief as to the remaining allegations of paragraph "7" of the complaint.

8. Denies knowledge or information sufficient to form a belief as to the allegations contained in paragraph "8" of the complaint.

9. Denis knowledge or information sufficient to form a belief as to the allegations contained in paragraph "9" of the complaint.

10. ATSI admits the Port Isabel Processing Center is an immigration detention center located outside of Los Fresnos, Texas and denies the allegations the facility is notoriously known for the systematic sexual, physical and financial abuse by the officers who work at the detention facility. The defendant denies it has knowledge or information sufficient to respond to the remaining allegations of paragraph "10" of the complaint.

11. ATSI admits that on June 14, 2009, Lt. Leal and other detention officers entered Delta Pod One where plaintiff was housed in response to an incident and that Delta Pod One is a holding cell inside the Port Isabel Processing Center. The defendant denies it has knowledge or information sufficient to respond to the remaining allegations of paragraph "11" of the complaint.

12. With respect to the allegations in paragraph "12" of the complaint, the defendant denies it has knowledge or information sufficient to form a belief.

13. With respect to the allegations in paragraph "13" of the complaint, the

3

defendant denies it has knowledge or information sufficient to form a belief.

14.    Defendant denies the allegations contained in paragraph "14" of the complaint.

15.    Defendant denies the allegations contained in paragraph "15" of the complaint.

16.    Defendant admits Lt. Leal proceeded outside of the Delta Pod One and into the Sally Port. The Sally Port is monitored by a video camera. Defendant admits that plaintiff was escorted to the Sally Port because he became unruly in the housing unit. Defendant further states it does not posses knowledge or information sufficient to form a belief as to the remaining allegations of paragraph "16" of the complaint.

17.    Denies the allegations contained in paragraph "17" of the complaint.

18.    Denies the allegations contained in paragraph "18" of the complaint.

19.    Denies the allegations contained in paragraph "19" of the complaint.

20.    Denies the allegations contained in paragraph "20" of the complaint.

21.    Denies it has knowledge or information sufficient to form a belief as to the allegations contained in paragraph "21" of the complaint.

## FIRST CAUSE OF ACTION:

## NEGLIGENCE

22.    Answering the subdivision thereof numbered "22", defendant repeats and reiterates each and every denial or admission hereinbefore made with the same force and effect as if again set forth at length herein.

23.    As and for a response to the allegations in paragraph "23", the defendant

4

denies and refers all questions of law to the trial court.

24. Denies the allegations contained in paragraph "24" of the complaint.

25. Denies the allegations contained in paragraph "25" of the complaint.

26. Denies the allegations contained in paragraph "26" of the complaint.

27. Denies the allegations contained in paragraph "27" of the complaint.

## SECOND CAUSE OF ACTION

## NEGLIGENCE

28. Answering the subdivision thereof numbered "28", defendant repeats and reiterates each and every denial or admission hereinbefore made with the same force and effect as if again set forth at length herein.

29. Denies the allegations contained in paragraph "29".

30. As and for a response to the allegations in paragraph "30", the defendant denies and refers all questions of law to the trial court.

31. Denies the allegations contained in paragraph "31".

32. Denies the allegations contained in paragraph "32".

33. Denies the allegations contained in paragraph "33".

34. Denies the allegations contained in paragraph "34".

35. Denies the allegations contained in paragraph "35".

5

## THIRD CAUSE OF ACTION:

## NEGLIGENT TRAINING

36.    Answering the subdivision thereof numbered "36", defendant repeats and reiterates each and every denial or admission hereinbefore made with the same force and effect as if again set forth at length herein.

37.    As and for a response to the allegations in paragraph "37", the defendant denies and refers all questions of law to the trial court.

38.    Denies the allegations contained in paragraph "38".

39.    Denies the allegations contained in paragraph "39".

40.    Denies the allegations contained in paragraph "40".

41.    Denies the allegations contained in paragraph "41".

## FOURTH CAUSE OF ACTION:

## NEGLIGENT SUPERVISION

42.    Answering the subdivision thereof numbered "42", defendant repeats and reiterates each and every denial or admission hereinbefore made with the same force and effect as if again set forth at length herein.

43.    As and for a response to the allegations in paragraph "43", the defendant denies and refers all questions of law to the trial court.

44.    Denies the allegations contained in paragraph "44".

45.    Denies the allegations contained in paragraph "45".

46.    Denies the allegations contained in paragraph "46".

47.    Denies the allegations contained in paragraph "47".

6

## DAMAGES

48(a).     Denies the allegations contained in paragraph "48(a)".

48(b).     Denies the allegations contained in paragraph "48(b)".

48(c).     Denies the allegations contained in paragraph "48(c)".

48(d).     Denies the allegations contained in paragraph "48(d)".

48(e).     Denies the allegations contained in paragraph "48(e)".

48(f).     Denies the allegations contained in paragraph "48(f)".

48(g).     Denies the allegations contained in paragraph "48(g)".

## FURTHER DENIAL

49.     That any aspect of the complaint not specifically responded to which requires any response from the defendant is denied.

## THE DEFENDANT, AHTNA TECHNICAL SERVICES, INC., UPON INFORMATION AND BELIEF, ALLEGES AS AND FOR A FIRST DEFENSE:

The limitations of liability provided in Article 16 of the CPLR apply to this action and none of the exceptions set forth in §1602 apply to the plaintiff's claim(s).

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE PURSUANT TO THE PROVISIONS OF CPLR §1411, THE DEFENDANT, AHTNA TECHNICAL SERVICES, INC., ALLEGES UPON INFORMATION AND BELIEF:

That if the plaintiff sustained any personal injuries or property damages, such injuries or damages were caused by his own negligence, wholly or partially, and without any negligence on the part of the answering defendant.

## AS AND FOR A SECOND AFFIRMATIVE DEFENSE:

That the plaintiff herein was guilty of culpable conduct, including contributory

7

negligence and comparative negligence, which said conduct bars plaintiff's right of recovery in proportion to which the said culpable conduct or negligence attributable to plaintiff bears the culpable conduct or negligence which caused the damages, if any, or the occurrence complained of by plaintiff was caused in whole or in part by the assumption of risk of the plaintiff.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE:

While the answering defendant denies the plaintiff's allegations of negligence and liability, any injury and damages, if proven, were the result of intervening and/or interceding acts of superseding negligence and liability on the part of parties over which this answering defendant neither has control nor has the right to control, and for which acts or omissions this answering defendant is not legally responsible.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE:

In the event the plaintiff recover a verdict or judgment against the answering defendant, then the verdict or judgment must be reduced pursuant to CPLR §4545(c) by those amounts which have been, or will, with reasonable certainty, replace or indemnify plaintiff, in whole or in part, for any past or future claimed economic loss, from any collateral source such as Insurance, Social Security, Workers' Compensation or employee benefit programs.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE:

Provisions of CPLR Article 50-B apply to this action.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE:

The defendant did not have actual or constructive notice of any propensity for

8

violence on behalf of officers that allegedly contributed to the accident alleged in the complaint.

### AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE:

The action against the defendant cannot be maintained as it is entitled to absolute and/or qualified immunity.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE:

Any intentional conduct on the part of the detention officers was performed outside the scope of their official duties.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE:

Any intentional conduct on the part of Lt. Leal was performed outside the scope of his official duties.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE:

The intentional conduct of anyone at the Port Isabel Detention Center which caused injuries to the plaintiff was a superseding and intervening cause attenuating any negligent conduct on the part of the defendant.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE:

The Prison Litigation Reform Act states no action shall be brought with respect to prison conditions by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted. The plaintiff failed to exhaust the administrative remedies.

### AS AND FOR A TWELFTH AFFIRMATIVE DEFENSE:

The defendant did not act with deliberate indifference to plaintiff's health and

safety.

### AS AND FOR A THIRTEENTH AFFIRMATIVE DEFENSE:

The first and second causes of action fail to state valid claims and must be dismissed as plaintiff is attempting to plead a cause of action in "negligent assault". New York does not recognize a cause of action for "negligent assault". Smiley v. North General Hospital, 872 N.Y.S.2d, 456, 457 (Once intentional offensive contact has been pled, the defendant is potentially liable for assault rather than negligence as New York does not recognize negligent assault).

### AS AND FOR A FOURTEENTH AFFIRMATIVE DEFENSE:

The first and second causes of action are barred by the one year statute of limitations contained in CPLR §215.

### AS AND FOR A FIFTEENTH AFFIRMATIVE DEFENSE:

New York does not have jurisdiction over the defendant because it no longer does business in the state and does not have any contact with the state.

### AS AND FOR A SIXTEENTH AFFIRMATIVE DEFENSE:

Under Texas law, the causes of action are untimely as Texas applies a two year statute of limitations to both personal injury and negligence actions. Tex. Civ. Prac. & Rem. Code §16.003.

### AS AND FOR A SEVENTEENTH AFFIRMATIVE DEFENSE:

The defendant had not specific knowledge or notice of the propensity for violence on the part of Lt. Leal or the detention officers and therefore the cause of action alleging negligent supervision must fail.

10

## AS AND FOR AN EIGHTEENTH AFFIRMATIVE DEFENSE:

The defendant is not responsible for the negligent hiring of Lt. Leal as it did not hire Lt. Leal.

## AS AND FOR A NINETEENTH AFFIRMATIVE DEFENSE:

The defendant did not have knowledge of any propensity for the conduct alleged to have been committed by Lt. Leal which caused plaintiff's injury. As such, the negligent hiring claim cannot be sustained.

## AS AND FOR A TWENTIETH AFFIRMATIVE DEFENSE:

Lt. Leal was an employee of Asset Protection & Security Services, and this entity is a necessary party to this litigation.

## JURY DEMAND

Defendant, AHTNA TECHNICAL SERVICES, INC., demands a trial by jury.

WHEREFORE, the defendant, AHTNA TECHNICAL SERVICES, INC., demands judgment dismissing the complaint against it and further demands judgment for the amount of any sums paid to the plaintiff over and against their proportionate share as determined by the apportionment of responsibility adjudged herein, together with costs and disbursements of this action and attorneys fees.

Dated: New York, New York
       September 5, 2012

Warren S. Koster
CALLAN, KOSTER, BRADY & BRENNAN, LLP
Attorneys for Defendant
AHTNA TECHNICAL SERVICES, INC.
One Whitehall St.-10th Floor
New York, NY 10004
(212) 248-8800

11

TO:

TROLMAN, GLASER & LICHTMAN, P.C.
Attorneys for Plaintiff
777 Third Avenue
New York, NY 10017
(212) 750-1200

And As Counsel To:

CHAVEZ & DeLEON, P.A.
5975 Sunset Drive, Suite 605
South Miami, Florida 33143
(305) 441-1281

# Affidavit of Service

STATE OF NEW YORK     )
                                              ss.:
COUNTY OF NEW YORK )

LINDA BELLINO, being duly sworn, deposes and says that:

I am not a party to this action; am over 18 years of age; and am employed in New York, New York.

On September 5, 2012, I served a true copy of the annexed **Amended Answer**, by mailing same in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the below-listed party(s) and by ECF with the U.S. District Court for the Southern District of New York:

TROLMAN, GLASER & LICHTMAN, P.C.
Attorneys for Plaintiff
777 Third Avenue
New York, NY 10017

_And As Counsel To_:

CHAVEZ & DeLEON, P.A.
5975 Sunset Drive, Suite 605
South Miami, Florida 33143

LINDA BELLINO

Sworn to before me this
5th day of September, 2012.

Notary Public

KELLY FILBERT
Notary Public, State of New York
No. 01FI5026463
Qualified in Kings County
Commission Expires April 18, 2014

13

**Answers to Complaints**
1:12-cv-05711-PGG Solorzano v. Ahtna Technical Services, Inc.
ECF

### U.S. District Court

### Southern District of New York

**Notice of Electronic Filing**

The following transaction was entered by Koster, Warren on 9/5/2012 at 4:53 PM EDT and filed on 9/5/2012
**Case Name:**        Solorzano v. Ahtna Technical Services, Inc.
**Case Number:**     1:12-cv-05711-PGG
**Filer:**              Ahtna Technical Services, Inc.
**Document Number:** 2

**Docket Text:**
ANSWER to Complaint with JURY DEMAND. Document filed by Ahtna Technical Services, Inc..(Koster, Warren)


1:12-cv-05711-PGG Notice has been electronically mailed to:

Jose Luis Flores    jflores@chavez-deleon.com

Warren S. Koster    wkoster@ckbblaw.com

1:12-cv-05711-PGG Notice has been delivered by other means to:

The following document(s) are associated with this transaction:

Document description:Main Document
Original filename:n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1008691343 [Date=9/5/2012] [FileNumber=10457372-0
] [5f242fc14d0fadf909f3de06a613ed496dca51862c5c1182fe678299e414c9c1774
e040fa3a101633eaf26f27dc81caee4a4e20f04e28b861a981e8583fa452a]]

**EXHIBIT D**



*Ahtna Technical Services Inc.*

# SUBCONTRACT AGREEMENT

**By and Between**

**Ahtna Technical Services, Incorporated**

**AND**

**Asset Protection and Security Services, LP (ASSET)**

**THIS AGREEMENT** entered into as of this 30 day of March 2009                by and between Ahtna Technical Services, Incorporated (ATSI) (hereinafter referred to as the "Prime Contractor" or "ATSI"), an Alaska Native Corporation-owned 8(a) business concern with its principal place of business located at 560 E. 34th Ave., Suite 300, Anchorage, Alaska 99503 and Asset Protection & Security Services, LP (ASSET) (hereinafter referred to as the "Subcontractor" or "ASSET") with its principal place of business located at 5502 Burnham Drive, Corpus Christi, Texas 78413.

## WITNESSETH:

**WHEREAS**, Prime Contractor has been awarded contract number HSCEOP-07-C-00019 (hereafter referred to as "Prime Contract") by the Department of Homeland Security, Immigration & Customs Enforcement (hereafter ICE) via the United States Small Business Administration to provide Detention Center Operations Services at the ICE facility located at 201 Varick Street, Manhattan, New York; and,

**WHEREAS**, Prime Contractor desires that the Subcontractor provide management personnel, supervisory detention officers and detention officers to perform service functions delineated in the Prime Contract, in connection with the performance of the Prime Contract and the Subcontractor has agreed to perform such services as required by designated personnel provided for herein;

**NOW THEREFORE**, in consideration of the promises, covenants and the terms and conditions contained herein, the parties hereby mutually agree:

## 1. SCOPE OF WORK

**A. Management Scope.** ASSET will provide managers and supervisors (as delineated in contract technical proposal) for the daily management, supervision and execution of detention operations related to the overall operation of a Government-owned/Company-operated detention facility for federal detainees. It is understood that the population will be comprised of individuals charged with federal offenses and detained while awaiting trial or sentencing, a hearing on their immigration status, or deportation.

ASSET will furnish personnel, management, equipment, supplies and services necessary for performance of all aspects of the subcontract, and will be responsible for all costs associated with and incurred as part of providing the services outlined in this subcontract. ASSET will provide specific services as set forth in Section 2 below and as further defined in the Statement of Work attached as Exhibit A, which is incorporated herein.

**B. Place of Performance.** ASSET understands that services are to be provided at 201 Varick Street, New York, NY 10014. Additional services, involving the transportation and supervision of detainees between various jails, holding facilities, hospitals, court locations and regional airports are also required. Detention Services involve supervision of approximately 250-300 detainees, both adult males and females, in three major classifications.

5011839                                    2

It is understood that detainee transport requirements may include, but may not be limited to, 2-3 trips per week to Harrisburg, Pennsylvania for JPATS/DOCC flights. Other transportation needs will include daily runs as necessary to county jails in Sussex, Bergen and Monmouth counties in New Jersey as well as any other facilities used to house detainees for the New York Field Office. Transportation will also be required to or from Newark Liberty Airport and John F. Kennedy airport on an "as needed" basis, which could occur frequently as daily, including weekends.

The Subcontractor will provide 3 (three) forty-four passenger buses and 9 (nine) fifteen-passenger vans and two SUV-type vehicles for transport requirements that are equipped and configured to ICE Detention Standards. Staffing will be available at the facility to perform required transports.

Transportation tasking is based on contract pre-award government estimates; should transportation tasking increase, ASSET shall be entitled to a price adjustment based upon the government's acceptance of such adjustment. If the price adjustment is accepted by the government, ASSET shall be entitled to all monies awarded on the same basis as the original contract pricing strategy; that is: all labor costs, and a share of any mark up for overhead, G&A, and profit.

**C. Operational Standards.** ASSET will ensure that the facility operates in a manner consistent with the mission of the Department of Homeland Security, ICE Detention and Removal Operation (DRO) and the Prime Contract. While in ASSETs custody, ASSET will ensure that detainees are transported in a safe, secure, and humane environment and their statutory and constitutional rights are safeguarded. ASSETs managers and supervisors responsible for in-facility detention operations will utilize published ICE Detention Standards as the governing authority for detention operations and comply with American Correctional Association (ACA) standards as necessary to meet ICE standards. Notwithstanding any term herein to the contrary, ASSET shall not be responsible for the design, maintenance, upkeep of housing, dining, or other areas of the facility except normal work area cleanliness.

**D. Training of Personnel.** ASSET will provide training commensurate with Prime Contract requirements to all detention staff members. Training shall include, but not be limited to Basic, ACA, On-the-Job and annual refresher courses. Training course development, administration and documentation shall be provided by ASSET in accordance with Prime Contract requirements. In addition, ASSET will be responsible for providing training for Transport Officers, including weapons training.

**E. Licensing.** ASSET will obtain, renew and maintain all required state and New York City licenses necessary to perform subcontract functions, including, but not limited to: New York State Watch, Guard or Patrol Agency, Branch Office, and such individual employee/guard permits as may be required to perform services.

(1) It is understood that all detention managers, uniformed detention supervisors and officers will be registered under ASSET's business name with the State of New York, if required.

5011839                                    3

F. **Insurance.** ASSET will maintain such insurance as required by Exhibit C to this Subcontract for employees paid by ASSET and for motor vehicles purchased, leased and/or registered to ASSET for services required herein

G. **Limitation on Subcontracting.** Under no circumstances shall ATSI subcontract more than 50% of the direct cost of this Contract or otherwise take any action in violation of FAR Clause 52.219-14, Limitation on Subcontracting.

## 2. PRIME/SUBCONTRACTOR FUNCTIONS/RESPONSIBILITIES

| Function/Responsibility | Prime Contractor | Subcontractor |
|---|---|---|
| **Personnel:** | | |
| Facility Director | X | |
| Asst. Facility Director | X | |
| Facility Director Secretary | X | |
| ACA Compliance Officer | | X |
| Quality Assurance-Other Services | X | |
| Safety & Environmental Specialist | X | |
| Chief of Security Services | | X |
| Asst. Chief of Security Services | | X |
| Security Admin & Schedule Officer | | X |
| Security Training Officer | | X |
| Detention Shift Supervisors (9 FTE's) | | X |
| Detention Officers (95 FTE's) | X | |
| Detention Officers-Armed (54 FTE's) Control Center (9 FTE's) | | X |
| Computer Services/IT Manager | X | |
| Detainee Services Manager | X | |
| Catering Coordinator | X | |
| Meal Preparation Staff (12 FTE's) | X | |
| Commissary Staff | X | |
| Warehouse Staff | X | |
| Laundry Staff (2 FTE's) | X | |
| Post Office Clerk | X | |
| HR/Records Office Manager | X | |
| Detainee Records Clerk | X | |
| Employee Records Clerk | X | |
| Employee Services Clerk/ID Credentials Clerk | X | |
| Logistics/Accounting Manager | X | |
| Employee/Detainee PR/Accounts Clerk | X | |
| Timekeeping/Invoicing Clerk | X | |
| **TOTAL FTE'S** | **127** | **77** |

5011839

4

| Function/Responsibility | Prime Contractor | Subcontractor |
|---|---|---|
| **ODC's:** | | |
| Insurance (as required by the ICE Contract) | X | X |
| Pre-Employment Drug Screening | X | X |
| Vehicles, Vehicle Maintenance, License & Insurance | | X |
| Detainee Uniforms | X | |
| Detainee Linen | X | |
| Detainee Sundries | X | |
| Miscellaneous Detainee Expenses | X | |
| Miscellaneous Communication Expenses | X | |
| Guard Permit Renewals, New Hires & Application Fees | | X |
| CDL Drivers License & Physicals | | X |
| Training-Weapons, CPR, 1ST Aid & Weapons Cleaning | | X |
| Weapons-Armory, Ammo, Restraints, Cuffs, Batons etc. | | X |
| Food Service Uniforms | X | |
| Food Service Carts | X | |
| Employee Uniforms (all Detention Employees) | | X |
| Cell Phones | X | X |
| Employee Manuals | X | |
| Employee Personnel Records Forms | X | |
| Miscellaneous Office Supplies | X | |
| Internet Access | X | |
| Copy Machine | X | |
| New Hires-Fingerprints, Physicals, Drug Screens, Background & Credit Checks | X | X |
| Annual TB Tests | X | X |
| Tri-annual Physicals | X | X |
| Random Drug Screens | X | X |
| Refresher Training for Detention Officers | X | X |
| Refresher Training for other Employees | X | |
| General Training | X | X |
| Parking (Vehicle) | | X |
| Meals (including JPATS) | X | |

## 3. SUBCONTRACT PRICE

**A. Determination of Payroll, Overhead, G&A Expenses, and Profit.** Prime Contractor shall pay a firm fixed price to Subcontractor for work Subcontractor performs under this Contract in accordance with Exhibit C, and per Item 2, Prime/Subcontractor Functions/Responsibilities.

**B. Adjustments for Contract Changes, Wage Determination Changes – Multi-Year Contract.** Should adjustments to contract price be necessitated for any reason including, without limitation, increased obligations, staffing, manpower or other contract changes and/or wage determination changes, the Prime Contractor and Subcontractor will collaborate to determine an appropriate price revision.

Prime Contractor shall timely submit to the Contracting Officer any price adjustments required or authorized by FAR Clause 52.222-43, including any Wage Determination changes based on union contracts or otherwise. In addition to any increased payment based on the price adjustment, Prime Contractor shall reimburse Subcontractor for any penalties, judgments, or retroactive payments suffered by Subcontractor due to the failure of Prime Contractor to timely submit such price adjustments, including any determination by the United States Department of Labor or other Federal entity that hourly wage and benefit adjustments are due to employees as a result of Federal Wage Determination changes.

Prime Contractor may at any time by written notice make changes within the general scope of this Subcontract including, but not limited to, changes in the Statement of Work, without limitation, the description or quantity of work to be provided by the Subcontractor; time of performance, delivery, inspection, or acceptance; terms and condition of purchase of this Subcontract if such changes are formally requested by ICE pursuant to the terms of the Prime Contract. No conduct other than a signed written change order will constitute a change to this Subcontract. If any change made affects the cost or schedules of this Subcontract, Subcontractor may request for an equitable adjustment in price or schedule or both. Any claim by Subcontractor for an equitable adjustment of price or schedule must be in writing and submitted within ten (10) calendar days from the date of Prime Contractor's written notification of change or such further time as Prime Contractor may allow in writing. Subcontractor's failure to adhere to the time deadlines in asserting the equitable adjustment claim shall serve as a waiver of the claim, unless the deadline is extended. Nothing contained in this Changes provision shall relieve or excuse Subcontractor from proceeding without delay in performing this Subcontract as changed.

## 4. INVOICING AND PAYMENT

**A. Services, Materials, and Prices.**

i. <u>Service Contract Act/Wage Determination.</u> In accordance with Title 29, of the Code of Federal Regulations, Labor Standards for Federal Service Contracts, the Service Contract Act (SCA) applies to this contract.

5011839                                            6

The Subcontractor is put on notice that regardless of the rate proposed for billing purposes and payment purposes, the Subcontractor is required by the Department of Labor during contract performance to pay non-exempt employees at least the applicable contracting officer contract-incorporated wage determination rate (including rates established via collective bargaining agreements) for the specific area(s), and provide applicable Health and Welfare benefits (payments or benefits as allowed per the SCA), if a specific wage determination(s) exists. Subcontractor shall maintain sufficient records to demonstrate requirements with the SCA.

**B. Billing Instructions.** Subcontractor shall submit its invoices to the ATSI's Project manager or to such other individual as ATSI may designate pursuant to the Notice provisions herein. Subcontractor shall submit invoices per the Prime Contractor's schedule with the government and shall submit its invoices to ATSI within five (5) calendar days of the conclusion of the invoice period.

Invoices may be formatted as the Subcontractor chooses, however, they must provide the following minimum information:
- (a) Subcontractor name and address
- (b) Subcontract Agreement number
- (c) The Prime Contract Number
- (d) Unique Subcontractor invoice number; i.e., a different number for each invoice
- (e) Period of performance; i.e., the start and end dates of the period covered by the invoice
- (f) Total current and cumulative amount of the invoice

**C. Payment.** Prime Contractor shall pay subcontractor's invoice within ten (10) calendar days upon acceptance and receipt of corresponding payment from the Government for Subcontractor's services covered by such invoice.

**D. Miscellaneous Expense Reimbursement.** Each party is responsible for any reimbursement to its employees for personal business expenses whether foreseen or unforeseen during the term of this contract. Provided, however, that where an item is reimbursable under this Subcontract or the Prime Contract, by cost line item or otherwise, the party responsible for such reimbursement shall make such payments within 10 calendar days of payment of invoice by Government to Prime Contractor.

**E. Reimbursement For Contract Services Provided By The Subcontractor That Are Not Within The Purview Of The Agreed Scope Of Work.** Any labor or materials provided by Subcontractor which are outside of the Scope of Work, and which are requested by Prime Contractor or, if not requested by Prime Contractor but approved by the Prime Contractor's Project Manager, otherwise necessary to fulfill the requirements of the Prime Contract, including coverage of labor deficiencies of Prime Contractor or services directed by ICE, shall be reimbursed by Prime Contractor "at cost" plus any overhead, G&A and profit markup received by the Prime Contractor for such labor or materials.

**F. Reimbursement for Costs When Transferring Employees from Prime Contractor to Subcontractor.** If a new employee is hired by Prime Contractor to perform work under the Prime Contract and is transferred to the position of Transportation Officer employed by

5011839                              7

Subcontractor within six (6) months of the initial date of hire by the Prime Contractor, Subcontractor shall reimburse Prime Contractor for the costs associated with the Prime Contractor's initial employment of that employee, including, but not limited to, the costs incurred for background checks and training. The salary and benefits of the transferred employee for the period of employment under the Prime Contractor shall not be included as a reimbursable cost.

## 5. PERIOD OF PERFORMANCE

The period of performance of this Subcontract shall be for the period of performance indicated in the Prime Contract and for all option periods (including extensions of the final option year) exercised by the Government. The period of Performance of this Subcontract may be terminated earlier pursuant to Section 12 "Termination," herein.

## 6. TERMS OF PRIME CONTRACT AND SUBCONTRACT

**A. Incorporation of Prime Contract.** Subcontractor and Contractor shall comply with all limitations and restrictions in the Prime Contract with the same force and effect as if they were set forth here in full text. This Subcontract incorporates all relevant clauses of the prime Contract, unless they conflict with or differ from the terms of this Subcontract Agreement, in which case, the Subcontract shall supersede the Prime Contract in that specific area, as between the parties. Specifically, this Agreement incorporates the Federal Acquisition Regulation (FAR) provision 52.244-2 Subcontracts (August 1998).

**B. Order of Precedence:** In the event of any inconsistency between the terms of the Prime Contract and the specific terms of this Subcontract, the specific terms of this Subcontract shall apply, except that in the event of any inconsistency between the Prime Contract Statement of Work and the Subcontract Statement of Work, the Prime Contract Statement of Work shall control; provided, however, that nothing in the Prime Contract Statement of Work shall be interpreted as extending Subcontractor's staffing or manpower obligations beyond the terms of this Subcontract. In the event that additional responsibilities, staffing or manpower by Subcontractor are required by ICE or Prime Contractor, and such requirement is in excess of the obligations stated in this Subcontract, the additional cost to Subcontractor may seek payment for such additional responsibilities, staffing or manpower pursuant to Section 3B and 4E of this Subcontract. Further, nothing in this Subcontract shall be construed to conflict with FAR Clause 52.219-14, Limitation on Subcontracting.

## 7. ASSIGNMENT AND SUBCONTRACTING

Neither this Subcontract, nor any of the monies due or to become due hereunder, shall be assigned, transferred, or conveyed, in whole or in part without the prior written consent of the other party, except that, without securing such prior consent, either party shall have the right to assign this Subcontract to any successor of such party by way of merger or consolidation or the acquisition of substantially all the assets of such Party relating to the subject matter of this Subcontract; provided, however, that any such assignment to such successor(s) shall expressly acknowledge the continuing nature of and assume all the obligations of such party under this subcontract and provided that the successor is not a competitor of the other party, and provided

5011839                                  8

that the successor is in all respects qualified and eligible to perform the Subcontract, provided that neither the successor nor its owners, officers or directors are suspended, debarred or proposed for debarment. For purposes of this provision, a competitor is any person or entity that either alone or through others has submitted a bid for government detention services for a facility where either party to this Subcontract also submitted a bid for the services within five years of the date of the bid. In the event that a party to this Subcontract attempts to assign this Subcontract to a competitor, the remaining party shall have the right to enjoin any such transaction creating a competitor-successor relationship and enjoin any performance by a competitor-successor under this Subcontract or the Prime Contract.

The Subcontractor shall not enter into any lower-tier Subcontract for any portion of this Subcontract without first obtaining Prime Contractor's written approval thereof; provided however, that this limitation shall not apply to Subcontractor's purchase of standard commercial supplies or purchase or lease of vehicles required to be provided under this Contract, or the hiring of training consultants.

## 8. BOOKS AND RECORDS

In accordance with the Audit and Records – Negotiation clause of the Prime Contract, incorporated herein by reference, at all times during the term of this Subcontract, Subcontractor shall maintain a complete and accurate set of files, records, books, papers, and accounts ("Records") of all business activities and operations conducted by Subcontractor in connection with Subcontractor's performance under this Agreement as is similarly required of Prime Contractor under the terms of the Prime Contract. Subcontractor shall make such Records available to Prime Contractor upon reasonable request. All accounts required under this Subcontract shall be maintained and prepared in accordance with generally accepted accounting principles and in the formats which Prime Contractor may direct.

Unless otherwise directed by the Prime Contract, and as is similarly required of Prime Contractor under the terms of the Prime Contract, Subcontractor, at all times during the term of this Subcontract and for a period of not less than three years after the date of termination or expiration of this Subcontract, or three years after the final payment under the Prime Contract is made, whichever is longer ("Retention Period") the Parties shall maintain all Records pertaining to its performance under this Subcontract and the Prime Contract. At all times during the Retention Period, upon reasonable notice from Prime Contractor, Subcontractor shall make available to Prime Contractor or to ICE, for inspection, audit, and copying, if requested, the Records related to its performance under this Subcontract. Subcontractor shall not otherwise limit the access of Prime Contractor or that of its duly authorized agents, representatives or employees when Prime Contractor seeks to perform such inspection or audit of Subcontractor's Records. When requested by Prime Contractor, but in any event not later than the end of the Retention Period, Subcontractor shall deliver such Records to Prime Contractor or its designee at the Prime Contractor's sole expense. Subcontractor may at its own expense make and maintain copies of Records for its files, subject to Subcontractor's obligation to maintain the confidentiality of all Confidential Information of Prime Contractor in accordance with Exhibit B. Further, during the Retention Period, a duly authorized representative of Prime Contractor shall, until three years after final payment under this Agreement, have access to and the right to examine and copy any directly related Records or other recorded information, and to examine

5011839                                                9

any property within Subcontractor's possession or control, involving transactions related to this Subcontract or the Prime Contract as is required of Prime Contractor under the terms of the Prime Contract with ICE.

Such access for Records relating to (1) litigation or settlement of claims arising from the performance of this Subcontract, or (2) costs and expenses of this Subcontract to which Prime Contractor or Subcontractor's duly authorized representative has taken exception shall continue until such appeals, litigation, claims, or exceptions are disposed of.

The Parties shall notify each other, in writing, of its receipt of a request for ICE to examine or obtain copies of Subcontractor's Records within three (3) calendar days of receiving such request. Notwithstanding any term herein to the contrary, the obligation for access and disclosure shall not apply to any documents or records protected by the attorney client communication or work product privileges or other records where disclosure would violate the privacy rights of third parties.

## 9. INSPECTION AND NOTICES

In accordance with FAR 52.246-4, Inspection of Services – Fixed Price, the Parties will permit such inspections as may be required to be made pursuant to the Prime Contract. The inspection by ICE of any portion or aspect of the Subcontractor's work covered by this Subcontract or the Prime Contract work does not relieve the Subcontractor of its responsibility for performance under this Subcontract or responsibility for any deficiencies or nonconformance or other failures to meet the Subcontract requirements.

The Parties will provide any notices to each other as may be reasonably required in order to permit each Party to fulfill its obligations of notice to ICE, or to comply with any requirements of the Prime Contract or this Subcontract. Such notice shall be deemed accepted upon hand delivery or certified mail, return receipt requested. All notices shall be mailed or delivered to:

Ahtna Technical Services, Incorporated
560 E. 34th Ave., Suite 300
Anchorage, Alaska 99503
Attn: President/CEO

Asset Protection & Security Services, LP
5502 Burnham Drive
Corpus Christi, TX 78413
Attn: General Manager

Any change in the notice address must be in writing and not be effective until thirty (30) calendar days after notice of the change is provided.

## 10. DISPUTES

**A. Disputes Under the Subcontract.** The parties shall make a good-faith effort to settle amicably by mutual agreement any dispute that may arise between them under this Subcontract

5011839                                         10

and the dispute procedures contained herein shall be applicable only after a good-faith effort to settle disputes by mutual agreement. Except with respect to issues subject to paragraph (b) of this Article any claim, controversy or dispute arising out of or related to this Subcontract which cannot be resolved according to the procedures herein shall be resolved as follows:

Notice of Claims. Each party must give written notice to the other of any dispute, controversy, or claim arising solely under this Subcontract and unrelated to the Prime Contract in any way within thirty (30) calendar days of the date the dispute arose. Except that any claims arising before the execution of this subcontract by both parties shall be considered as being preserved and not expired upon such execution.

The parties agree that any controversy, claim or dispute between the parties relating to this Subcontract, including inability to reach agreement regarding price revisions due to contract changes, alteration of staffing or manpower requirements, etc. shall first be submitted to mediation. The parties agree to obtain the services of a mediator to mediate and attempt to resolve any dispute and to share the expense of any such mediator. If any such matter is not resolved through mediation within thirty (30) calendar days after receiving notice of the dispute, then, upon any Party's written request within five (5) calendar days thereafter, such matter shall be settled by binding arbitration in New York, NY under the American Arbitration Association rules then obtaining; except that the dispute shall be resolved by a single arbitrator within ninety (90) calendar days of the request for arbitration, judgment upon such arbitration award, if written may be entered in any forum, state or federal, having jurisdiction. The arbitrator shall award the prevailing party its costs and fees, including reasonable attorney's fees expended in the dispute process provided for herein.

Both parties agree that the occurrence of a dispute shall not interfere with either party's performance or other obligations under the Subcontract or the Prime Contract.

**B.  Disputes Under the Prime Contract.**

i.    The Prime Contract includes a disputes clause, FAR 52.233-1 (the "Disputes Clause"), pursuant to which the Prime Contractor may pursue remedies in the event of a dispute between the Government and either or both parties with respect to questions of law or fact relating to the Prime Contract. All claims, controversies or disputes concerning matters that reasonably constitute a "Claim" as defined in the Disputes Clause of the Prime Contract shall be governed solely by the provisions of the Disputes Clause, as supplemented by this Article 10 (B). In the event of a conflict between the Disputes Clause and this Article 10 (B) as between the parties, the Disputes Clause will control.

ii.   The Party desiring to submit a claim against the Government under the Disputes Clause shall, at its own expense, be responsible for providing any and all certifications required by law or regulation relating to matters subject to the Disputes Clause and any and all information requested by the remaining party or the Government to verify, support, or confirm such certifications. Claims under the Dispute Clause may be brought by the Prime Contractor or the Prime Contractor on behalf of the Subcontractor. Upon notice and request of a Party of its intent to file such a claim, the

5011839                                    11

other Party shall assist as necessary to file such claim and to allow the claim to be perfected and timely and fully pursued, including but not limited to, filing the claim in the first instance as sponsor for the claim. Subject to attorney client communications, attorney work product and other such privileges the Parties to this Subcontract agree to provide access to and copies of necessary records and access to personnel to allow the Party asserting the claim to do so unimpeded.

iii.    In the event the Subcontractor elects to appeal any Government decision pursuant the Disputes Clause of the Prime Contract, whether at the agency level or at a Board of Contract Appeals or a federal court, and such claim, in whole or in part, arises out of or relates to this Subcontract, and to perfect or advance the appeal, participation by Prime Contractor is required as a sponsor or otherwise, upon request of Subcontractor, Prime Contractor shall file such claim or appeal on behalf of Subcontractor, or otherwise assist in any such appeal as necessary to allow Subcontractor to perfect and pursue the appeal. In such event, at Subcontractor's sole cost and expense, Subcontractor shall provide all necessary documentation and personnel access for the prosecution of the appeal. Prime Contractor agrees, subject to attorney client communications, attorney work product and other such privileges, to allow Subcontractor access to and copies of necessary records and access to personnel to support its appeal. The Subcontractor will be responsible for all costs and expenses incurred by the Prime Contractor in pursuit of the Subcontractor's claim before an agency, Board of Contract Appeals, or federal court.

iv.    In the event the Prime Contractor elects to appeal any Government decision pursuant the Disputes Clause of the Prime Contract, whether at the agency level or at a Board of Contract Appeals or a federal court, and such claim, in whole or in part, arises out of or relates to this Subcontract, and to perfect or advance the appeal, participation by Subcontractor is required as a sponsor or otherwise, upon request of Prime Contractor, Subcontractor shall assist in any such appeal as necessary to allow Prime Contractor to perfect and pursue the appeal. In such event, Subcontractor agrees, subject to attorney client communications, attorney work product and other such privileges, to allow Prime Contractor access to and copies of necessary records and access to personnel to support its appeal.

v.    If, as a result of a final decision or judgment with respect to a dispute under this Section, Subcontractor is unable to obtain reimbursement under the Prime Contract for, or is required to refund or credit the Government any amount for which Prime Contractor has reimbursed or paid Subcontractor, Subcontractor shall, on demand, remit Repayments to Prime Contractor within thirty (30) business days from when Subcontractor is notified of such demand in accordance with "Notices," Article 9. Subcontractor shall be liable for all costs expended by Prime Contractor in collecting such Repayments from Subcontractor, including reasonable attorney's fees and expenses. Subcontractor also shall be liable for interest on such Repayments that shall begin to accrue on the thirty first (31) day after Subcontractor is notified of such demand. Such interest shall accrue at one (1) percent above the prime rate published on the effective date of the Repayment demand notice. The rights and obligations herein shall survive the termination of this Subcontract.

5011839                                    12

vi.     Any final decision of the Contracting Officer under the Prime Contract Disputes Clause relating to this Subcontract or Subcontractor's performance hereunder, or any decision or appeal that is not further appealed, shall be conclusive and binding on the Subcontractor unless appealed pursuant to this Section and Prime Contractor shall notify Subcontractor of any such final decision within ten (10) business days of the Prime Contractor's receipt thereof.

## 11. EXCUSABLE DELAY

Neither party shall be liable for any delay or failure in performance hereunder arising out of causes beyond its control and without its negligence or fault. Each Party, in the event of such a cause, shall notify the other immediately in writing of its delay or failure in performance, describing the cause and its effect upon the Party's performance and the anticipated duration of the inability to perform.

## 12. TERMINATION

**A. Expiration.** Except as otherwise provided herein, this Agreement shall expire upon the earlier of: 1) written notification from Prime Contractor to Subcontractor that the customer has failed to approve Subcontractor; 2) expiration of the Subcontract term; or 3) written mutual agreement signed by both parties.

**B. Termination prior to Expiration.** This Subcontract shall terminate immediately on the occurrence of any of the following events:

i.     Completion of performance by Prime Contractor of the Prime Contract (ICE);

ii.     Termination of the Prime Contract by IGE for any reason whatsoever;

iii.     Failure by Subcontractor to cure a default in the performance or a breach of a material term of this Subcontract within 72 hours, except that this period may be extended upon request for such by the subcontractor within 72 hours to such time deemed appropriate by both parties, after written notice of default from the Prime Contractor;

iv.     By mutual agreement of both parties;

v.     Upon written request of Subcontractor and agreement of Prime Contractor for good cause, such agreement shall not be unreasonably withheld;

vi.     The entering into or filing by or against the Subcontractor of a petition, arrangement, or proceeding seeking an order for relief under the bankruptcy laws of the United States, a receivership for any of the assets of Subcontractor, an assignment for the benefit of its creditors, or the dissolution, liquidation, or insolvency of Subcontractor;

5011839             13

vii    Subcontractor fails to agree upon any deletion, amendment or addition to this Agreement which is required by statute, executive order, applicable regulations, or is otherwise necessary deemed appropriate by Prime Contractor as a result of or relating to a modification of the Prime Contract;

viii.    Subcontractor is sanctioned, suspended, or debarred by the federal government; or

ix.    Subcontractor has an organizational conflict of interest as defined in FAR Subpart 9.5 that, in the conclusive opinion of Prime Contractor or Prime Contractor or the Government, cannot be mitigated.

In the event that the Prime Contract between ICE and Prime Contractor is terminated for any reason by ICE, with or without cause, then this Subcontract may be deemed to have been simultaneously terminated, as of the date of termination of the Prime Contract. Prime Contractor shall notify the Subcontractor of said termination on the date of receipt of notification of termination from ICE. Upon termination pursuant to this Paragraph, Prime Contractor and Subcontractor shall be released from any future performance obligations, hereunder, provided, however, that both parties shall remain liable for any default caused by its performance or lack thereof occurring prior to this termination and not cured within the time allotted for such cure.

Upon notice of termination, Subcontractor shall follow the terms of the notice precisely and shall cease performance as required by the termination notice. In the event of termination, Subcontractor shall be entitled to payment only for work performed through the date of cessation of performance pursuant to the notice. In the event the termination occurs in the middle of a payment period, any unit costs for that payment period shall be prorated to reflect only the actual work performed through the date of cessation of performance.

Notwithstanding the foregoing, the parties shall retain their respective rights under the Disputes clause of this Agreement.

C.    Performance Obligations and Rights after Termination.

i.    In the event that Prime Contractor exercises its rights under this Termination under this Article, the Parties shall continue to perform its obligations hereunder diligently to the extent this Agreement is not terminated. Upon termination pursuant to this Paragraph, Prime Contractor and Subcontractor shall be released from any future performance obligations with respect to the terminated portions of the Statement of Work, subject to Article 20, Survival, and further provided that both parties shall remain liable for any default caused by its performance or lack thereof occurring prior to this termination and not cured within the time allotted for such cure.

ii.    Notwithstanding the foregoing, the parties shall retain their respective rights under the Disputes clause of this Agreement.

6011839                                        14

### 13. INDEMNIFICATION

(a)    The employees of each party shall obey all pertinent rules, regulations and laws during performance of this Subcontract. Each party agrees to defend, indemnify and hold harmless the other party from and against any and all claims for: (a) damage to, or the loss of use of, the other party's personal property; and (b) injury or death caused by any act or omission of the indemnifying party's employees, consultants or agents in connection with the performance of this Agreement. This indemnification shall survive the termination of this Agreement

(b)    The Parties agree that the mutual indemnity provisions provided for in this Article 13 include, but are not limited to, claims based on negligence, and that such provisions are conspicuous.

### 14. COMPLIANCE WITH LAWS.

Subcontractor shall comply with all applicable Federal, state, county, and local laws, ordinances, regulations, and codes in the performance herewith including the procurement of any necessary permits and licenses.

### 15. MANAGEMENT RESPONSIBILITIES.

The Prime Contractor is responsible for compliance with all statutory regulations (City, State, Federal) as may apply to payment of employee wages and benefits for employees carried on its payroll.

The Subcontractor is responsible for compliance with all statutory regulations (City, State, Federal) as may apply to payment of employee wages and benefits for employees carried on its payroll.

Should the employees under contract to Prime Contractor/Subcontractor elect to form a Union, and should they then later form or join as such, the Subcontractor's designated representative shall be included in the Prime Contractor's negotiating team.

### 16. INDEPENDENT CONTRACTOR

Subcontractor's relationship to Prime Contractor in the performance of this Agreement is that of an independent contractor. This Agreement is not intended by the parties to constitute or create a joint venture, partnership, or formal business organization of any kind whatsoever. This agreement specifically does not pertain to any other contracts or business interests or revenues except as pertaining to this contract.

### 17. LICENSE

The Parties recognize that certain proprietary and/or confidential information of each may be shared with the other solely for the purpose of fulfilling the obligations under this Subcontract. Neither the execution and delivery of this Subcontract, nor the furnishing of any proprietary information by either party shall be construed as granting to the other party either expressly, by

5011839                                    15

implication, estoppels, or otherwise, any license under any invention or patent, currently or hereafter owned or controlled by the party furnishing same. Unless provided expressly otherwise in writing, none of the information, which may be submitted or exchanged by the parties, shall constitute any representation, warranty, assurance, guarantee, or inducement by either party to the other with respect to the infringement of trademarks, patents, copyrights, or any right of privacy, or other rights of third persons.

The Parties further acknowledge that Asset Protection & Security Services, LP (Asset) and Charles S. Mandel have developed and continue to improve and develop a detainee/prisoner tracking system (Tracking System) and that such Tracking System is an invention, trade secret, intellectual property, confidential and proprietary information exclusively of Asset and Charles S. Mandel. Prime Contractor, on behalf of itself, its agents, owners, shareholders and employees, acknowledges that it has no rights, title, license, or interest of any nature to the Tracking System. Nothing provided for in this Contract or the Prime Contract shall provide any rights, title, license, or grant, expressly or implied, by estoppel or otherwise, to the Tracking System to Prime Contractor, ICE or any other third party

## 18. INSURANCE

Subcontractor will provide the insurance coverage indicated in Exhibit D at its own expense, such insurance to remain in effect until completion of all work specified to be performed under this Agreement. The Prime Contractor and ICE shall be listed as "additional insured" on certificates of insurance issued by the Subcontractor's insurance company for this contract. Subcontractor shall be listed as an additional insured on the certificates of insurance issued by Prime Contractor subject to the approval by Prime Contractor's insurance provider. Prime Contractor shall use all reasonable efforts to facilitate the approval by the insurance company.

## 19. CODE OF ETHICS

Subcontractor shall have a Code of Ethics addressing at least the following areas: accurate time records and reporting; gifts and entertainment to Government customers; hiring of former government employees; protection of Government proprietary and source selection information; extending and receiving business courtesies; and personal and organization conflicts of interest. Subcontractor also shall have an Ethics Compliance Program, components of which shall include training and annual compliance certifications by employees.

## 20. PUBLICITY

The Parties shall not issue or sponsor any advertising or publicity that states or implies, either directly or indirectly, that either Party or ICE endorses, recommends or prefers either Party's services. Subcontractor The Parties shall not use the others or ICE logo in any fashion without prior written approval of the applicable entity.

## 21. APPLICABLE LAW

This agreement, including the Disputes clause, shall be construed in accordance with the laws of the State of Alaska. Each party warrants and certifies that in the performance of this Subcontract,

5011839                                           16

it will comply with all applicable statutes, rules, orders and regulations of the United States, and of any applicable state or political subdivision thereof. Each party agrees to indemnify each party against any loss, cost, damage, or liability incurred by reason of each party's violation of this clause.

## 22. CAPTIONS

The captions herein are inserted solely as a matter of convenience and for purposes of reference and do not define, limit or describe the scope of this Agreement or the intent of any provision herein.

## 23. SEVERABILITY

If any part, term, or provision of this Agreement shall be held void, illegal, unenforceable, or in conflict with any law of a federal, state or local government having jurisdiction over this Agreement, the validity of the remaining portions or provisions of this Agreement shall not be affected thereby.

## 24. CONFLICTS OF INTEREST

Subcontractor represents that its execution and performance of this Agreement does not conflict with or breach any contractual, fiduciary or other duty or obligation to which Subcontractor is bound. Subcontractor further represents that it will not accept work during the term of this Agreement that would create an organizational conflict of interest ("OCI") as such term is defined in FAR Subpart 9.5. The guidelines and procedures of FAR Subpart 9.5 will be used in identifying and resolving any issues of organizational conflict of interest.

## 25. SURVIVAL

The following Articles shall survive the termination or expiration of this Agreement: Articles 8, 10, 13, and 24.

## 26. ENTIRE AGREEMENT

This Agreement and all authorized Exhibits attached hereto, constitutes the entire Agreement between the parties hereto and supersedes all prior Agreements, understandings, and arrangements, oral or written, between the parties hereto with respect to the subject matter herein. This Agreement is binding upon and shall accrue to the benefit of the successors in interest and assignees of the respective parties.

## 27. AMENDMENTS AND WAIVERS

The Agreement may not be modified or amended except in writing, signed by both parties. Either party hereto may, by an instrument in writing, waive compliance by the other party with any term or provision of this Agreement on the part of such other party. The waiver by any party hereto of a breach of any term or provision of this Agreement shall not be construed as a waiver of any subsequent breach.

5011839                                                17

*******************

IN WITNESS THEREOF, the parties have executed this Agreement on the day and year first above written.

Ahtna Technical Services, Incorporated

By:

Carolyn Craig, President/CEO

Date: 03/30/09

Asset Protection and Security Services, LP

By:

Charles S. Mandel, President

Date: 03/30/09

5011839                              18

# EXHIBIT A

## STATEMENT OF WORK

The final Technical Proposal and Statement of Work as published in the Prime Contract shall be appended to this contract as Exhibit A.

**EXHIBIT B**

**PROPRIETARY INFORMATION PROVISIONS**

The party receiving the information described below shall be hereinafter referred to as a receiving party. The receiving party agrees to keep in confidence and prevent the unauthorized disclosure to any person or persons outside its organization, and agrees further not to use for a purpose other than for which furnished (and then only with appropriate restrictions governing its use), any and all data and information including all data and information previously furnished by the other party (hereinafter referred to as "transmitting party") deemed proprietary or confidential in nature by the transmitting party. The transmitting party should designate, in writing, the proprietary information as such, or by appropriate stamp or legend. The receiving party shall not be liable for unauthorized disclosure of any such data or information if the same:

    (a)    is in the public domain at the time it was disclosed; or

    (b)    is known to the receiving party at the time of receipt; or

    (c)    is disclosed inadvertently despite the exercise of the same degree of care as the receiving party takes to preserve and safeguard its own proprietary information, provided also that any person having access to such information shall be advised of the contents of this Agreement; or

    (d)    is disclosed with a written approval of the transmitting party; or

    (e)    was independently developed by the receiving party; or

    (f)    becomes known to the receiving party from a source other than the transmitting party; or

    (g)    was not identified in writing, or by application of the appropriate identifying stamp or legend, as proprietary information subject to this Agreement; or

    (h)    is disclosed more than three (3) years after it was first received under this Agreement.

Each party shall designate in writing the individual or individuals authorized to receive proprietary information under this Agreement and either party may change its designation by written notice to other.

Proprietary information is defined as, but not limited to, performance, sales, financial, contractual and special marketing information, ideas, technical data, and concepts originated by the disclosing party, not previously published or otherwise disclosed to the general public, not previously available to the receiving party or others without restriction, not normally furnished to others without compensation, and which the disclosing party desires to protect against unrestricted disclosure or competitive use, and which is furnished pursuant to this Agreement and appropriately identified as being proprietary when furnished. Proprietary information also

5011839                                              20

includes the Technical and Cost Proposals submitted by Prime Contractor for the Prime Contract including the portions relating to the Subcontractor proposals.

The receiving party of proprietary information agrees to hold such information in confidence for a period of two years from the latter of the date of its receipt or termination of this Agreement.

No license to the other party, under any trademark, patent, or copyright, or applications that are now or may thereafter be owned by such party, is either granted or implied by the conveying of information to that party. None of the information which may be submitted or exchanged by the parties shall constitute any representation, warranty, assurance, guarantee, of inducement by either party to the other with respect to the infringement of trademarks, patents, copyright, or any rights of privacy, or other rights of third persons.

## EXHIBIT C

## SCHEDULE B – FIXED PRICE COST PROPOSAL

Asset Protection & Security Services, LP
5502 Burnham Drive
Corpus Christi, TX 78413
(361) 906-1552

Subcontractor to Ahtna Technical Services, Inc. at the Detention Processing Facility located at 201 Varick Street, New York, NY for Armed Guard Services.

| CLIN | Description | Qty | U of M | Unit Price | Fixed Price |
|------|-------------|-----|--------|-----------|-------------|
| 0001 | Phase in services from 9/24/07-12/31/07 | 99 | DA | 67,754.92 | $ 6,707,737.40 |
| 0002 | Base Period from 1/1/08-2/26/08 | 57 | DA | 25,105.19 | $ 1,405,890.64 |
| 0003 | Transportation services for the movement of Detainees: 1/1/08 - 2/26/08 | 84,558 | DH | 0.485 | $ 41,010.63 |
| 1001 | Option Yr 1 from 2/27/08-2/26/09 | 12 | MO | 763,616.31 | $ 9,163,395.72 |
| 1002 | Transportation services for the movement of Detainees; 2/27/08 – 2/26/09 | 555,976 | DH | 0.485 | $ 269,648.36 |
| 2001 | Option Yr 2 from 2/27/09-2/26/10 | 12 | MO | 781,155.56 | $ 9,373,866.68 |
| 2002 | Transportation services for the movement of Detainees: 2/27/09 – 2/26/10 | 606,520 | DH | 0.485 | $ 294,162.20 |
| 3001 | Option Yr 3 from 2/27/10-12/26/10 | 10 | MO | 793,427.83 | $ 7,934,278.26 |
| 3002 | Transportation services for the movement of Detainees: 2/27/10 - 12/26/10 | 606,520 | DH | 0.485 | $ 294,162.20 |

| | |
|---|---|
| TOTAL FIXED PRICE COSTS PHASE IN & BASE YEAR | $ 8,154,215.86 |
| TOTAL FIXED PRICE COSTS FIRST OPTION YEAR | $ 9,433,044.08 |
| TOTAL FIXED PRICE COSTS SECOND OPTION YEAR | $ 9,668,028.88 |
| TOTAL FIXED PRICE COSTS THIRD OPTION YEAR | $ 8,228,407.86 |
| TOTAL FIXED PRICE BASE YEAR THROUGH THIRD OPTION YEAR | $ 35,489,696.70 |

5011839

22

## EXHIBIT D

## INSURANCE REQUIREMENTS

In addition to the insurance requirements set forth in FAR 52.228-5, 52.228-7 and other clauses incorporated into this Subcontract by reference, Subcontractor shall have the following types of insurance and shall maintain them in the amounts shown during the term of this Agreement:

      (a)     Comprehensive General Liability: $1,000,000 for each occurrence and $2,000,000 aggregate per project.

      (b)     Automobile Insurance: $1,000,000 for liability coverage and $1,000,000 for personal injury.

      (c)     Workers' Compensation and Employer's Liability Coverage: $1,000,000 for bodily injury per accident and $1,000,000 for bodily injury by disease. If applicable, Defense Base Act workers compensation insurance for personnel provided pursuant to this subcontract (including but not limited to: employees, Prime Contractors, lower tier subcontractors) performing services overseas in support of the national defense.

The Subcontractor shall provide a certificate executed by an authorized insurer that such insurance is in full force and effect and that Subcontractor will be notified thirty (30) calendar days prior to the modification or cancellation of such insurance. The certificate of insurance must be furnished to Subcontractor at least five (5) calendar days before entry of Subcontractor personnel on a Government installation. The Subcontractor further certifies that it shall continuously maintain such insurance for the duration of this Subcontract.

5011839

23

## Affidavit of Service

STATE OF NEW YORK   )
                         ss.:
COUNTY OF NEW YORK )

       LINDA BELLINO, being duly sworn, deposes and says that:

       I am not a party to this action; am over 18 years of age; and am employed in New York, New York.

       On November 29, 2012, I served a true copy of the annexed **SUMMONS AND VERIFIED THIRD-PARTY COMPLAINT**, by mailing same in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service within the State of New York, addressed to the last-known address of the below-listed party(s) <u>and</u> by **ECF** with the U.S. District Court for the Southern District of New York:

CHAVEZ & DeLEON, P.A.
Attorneys for Plaintiff
Attorneys for Plaintiff
5975 Sunset Drive, Suite 605
South Miami, Florida 33143

TROLMAN, GLASER & LICHTMAN, P.C.
Attorneys for Plaintiff
777 Third Avenue
New York, NY  10017

_____
LINDA BELLINO

Sworn to before me this
29th day of November, 2012.

_____
Notary Public

EILEEN GAMBINO
Notary Public, State of New York
No. 01GA6046968
Qualified in Richmond County
Commission Expires Aug 21, 20 14

14